

EOD
01/31/2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MACIEK PAWEL NAZARKO | § | Case No. 05-40372 |
| and CATHY LYNN NAZARKO, | § | (Chapter 7) |
| Debtor. | § | |
| _____ | § | |
| | § | |
| DAVID MORAINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Adv. No. 05-4270 |
| | § | |
| MACIEK PAWEL NAZARKO, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

On August 13, 2007, this Court conducted a trial on the "First Amended Adversary Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523" filed by David Moraine ("Moraine" or the "Plaintiff") against Maciek Pawel Nazarko ("Nazarko" or the "Defendant"). The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.[1]

## BACKGROUND

Prior to filing for bankruptcy protection, Nazarko conducted business as and under various assumed names, including Mike Nazarko, M.P. Nazarko, M.P. Nazarko

---

[1] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

Company, Maxsam, and Maxsam Construction. From 1991 through 2001, Nazarko was an automobile wholesaler/dealer in the State of Texas. Moraine purchased approximately six cars from Nazarko over a two-year period.

Moraine is an attorney licensed to practice law in the State of Texas. Nazarko and Moraine became casual acquaintances through a mutual friend. Moraine performed legal services for Nazarko's family in connection with a personal injury action that was totally unrelated to the transaction that is the subject of Moraine's adversary complaint.

In late 1996, Nazarko sold Moraine a 1992 Acura Legend LS automobile for $14,000.00 plus costs for minor repairs. Nazarko represented to Moraine that this was a "great deal" in that the Acura belonged to Nazarko's wife, who wanted to replace the Acura with a Mercedes. Nazarko represented that he "really liked" the Acura and that, if Moraine ever decided to sell the Acura, he (Nazarko) would be interested in re-purchasing the vehicle from Moraine.

In June of 1997, Moraine approached Nazarko and inquired about purchasing a truck. Nazarko offered to sell Moraine a 1988 Jeep Cherokee truck. Moraine paid $4,500 for the vehicle plus costs for minor repairs. Additionally, Moraine agreed to re-sell Nazarko the Acura for $13,000, plus one-half of whatever proceeds Nazarko ultimately obtained for the Acura in excess of $14,000.[2] In reliance on this agreement, Moraine delivered the Acura to Nazarko in good condition and free of defects.

On or about July 10, 1997, Nazarko telephoned Moraine and informed him that he had made a deal to sell the Acura to Bruce Datcher at Swift Auto Sales and Leasing in

---

[2] Nazarko's testimony at trial that he did not agree to sell the Acura for Moraine and that he referred Moraine to Datcher so that Datcher could sell the Acura for Moraine was not credible. Additionally, Nazarko's testimony at trial was inconsistent with an affidavit he executed, under oath, in connection with the state court litigation underlying this adversary proceeding.

2

Dallas, Texas. Nazarko provided Moraine with a "sight draft" from Swift Auto Sales and Leasing for $15,500. In reliance, Moraine delivered the vehicle title to Nazarko. Accordingly, under the terms of the agreement, Nazarko was to pay Moraine $14,000. Nazarko instructed Moraine to return the next day to pick up his check.

Nazarko endorsed and deposited the bank draft with his bank on July 11, 1997. When Moraine inquired regarding the status of payment, Nazarko informed Moraine that Datcher's draft had not yet cleared the bank, and as a result, it would be a couple of days before funds were available to pay Moraine for the automobile. When Nazarko failed to deliver the funds as promised, Moraine inquired as to the status of the funds. Nazarko informed Moraine that Datcher had "wrongfully" stopped payment on the sight draft.

Over the next two years, Nazarko represented to Moraine that he was attempting to sell the Acura. Nazarko told Moraine at different times that repairs were being made to the automobile at various locations, that Datcher had wrecked the automobile, that Nazarko had listed the automobile in auto auctions, or that sales were "pending." When Moraine issued an ultimatum, refusing to leave without the vehicle, Nazarko admitted to Moraine that he no longer possessed the automobile. Nazarko first told Moraine that the automobile had been seized by federal authorities, then he told Moraine that the vehicle had been stolen.

Nazarko offered to file an insurance claim and turn the proceeds over to Moraine. He requested that Moraine pick up and assist him with claims paperwork, which Moraine agreed to do. However, when Moraine contacted Nazarko's insurance agent, the agent informed Moraine that he had spoken with Nazarko who had elected not to file a claim

because the automobile had not been stolen. Thereafter, Nazarko refused to acknowledge or return the telephone calls or attempts to contact Nazarko made by Moraine.

Moraine filed suit against Nazarko and Datcher in County Court at Law Number Two for Dallas County, Texas.[3] Moraine's state court complaint, as amended, alleged claims for fraud, fraudulent concealment, conversion, negligent bailment and breach of contract, among other things. Moraine sought lost expectation damages in the amount of $14,000, or in the alternative, damages for quantum meruit or unjust enrichment in the amount of $19,000 as well as exemplary and other damages. Additionally, Moraine sought to recover his attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code.

In response to Moraine's discovery requests, Nazarko disclosed that he had sued Datcher on or about August 1, 1997, in the County Court at Law Number One for Dallas County, Texas. In that suit, Nazarko sought to recover from Datcher the purchase price of $15,500 from the alleged sale of Moraine's Acura to Datcher. Nazarko stated in an affidavit filed in connection with the suit that he had sold the Acura to Datcher on July 10, 2000 for $15,500 and that the draft for $15,500 that Datcher provided to Nazarko was returned unpaid.

Moraine also discovered that, on April 2, 1998, Nazarko and Datcher entered into a mediated settlement agreement regarding the Acura. As part of the settlement, Nazarko admitted that Datcher had never presented him with a draft for the Acura. Datcher, who did in fact have possession of the Acura, agreed that if could not sell the Acura for more than $12,000 within 90 days, the Acura was to be relinquished to Nazarko. Datcher was unable to sell the Acura, and the Acura remained on Datcher's lot until his attorney

---

[3] Datcher died of cancer prior to the trial of Moraine's adversary complaint.

threatened to sue Nazarko for storage fees. Nazarko eventually towed the Acura from Datcher's lot.

On September 10, 2004, Moraine moved for summary judgment in his state court lawsuit on his claims against Nazarko for suit on a sworn account, breach of contract claim and unjust enrichment. Nazarko opposed Moraine's summary judgment motion but failed to appear for oral arguments on the motion on October 6, 2004. At the conclusion of the hearing, the state court granted Final Summary Judgment for Moraine in the sum of $14,000.00, plus pre-judgment interest at 6% and post-judgment interest at 5%, on Moraine's claim for breach of contract, and the state Court awarded Moraine $10,000.00 in reasonable and necessary attorneys' fees on Moraine's request for attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices and Remedies Code. Moraine's judgment remains unsatisfied and the whereabouts of the Acura are unknown.

Nazarko and his wife commenced bankruptcy proceedings under Chapter 7 of the Bankruptcy Code on January 24, 2005. Nazarko listed Moraine in his bankruptcy schedules with an address of 419 South Carroll, Suite 300, Denton, Texas. This was formerly the address for Moraine's law practice. Narzarko knew and had previously received documents in the underlying lawsuit reflecting that Moraine's current business address was 1512 East McKinney, Suite 200, Denton, Texas 76205. Moraine had issued a forwarding order to the United States Postal Service in 2003 when he relocated his business from 419 South Carroll, but such order had expired.

Nazarko obtained a discharge of debts owed Plaintiff on June 4, 2005. Moraine did not learn, or receive any notice, actual or otherwise, of Nazarko's bankruptcy filing and discharge until July 13, 2005. On that date, a Dallas County Constable advised

5

Moraine of Nazarko's discharge incident to the Constable's attempted execution on the writ against Nazarko issued by the state court.

Moraine subsequently filed a motion to reopen Nazarko's bankruptcy case in order to file a complaint objecting to the dischargeability of Narzarko's obligations to Moraine. The Court entered an order granting the motion on November 29, 2005. On December 19, 2005, Moraine initiated this adversary proceeding against Nazarko.

## DISCUSSION

In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Thus, without satisfactory proof of each element of the causes of action asserted by the Plaintiff, judgment must be entered for the Defendant.

### A. §523(a)(3)(B): Unlisted and Unscheduled Debts

Moraine filed his nondischargeability complaint after the deadline for objecting to the dischargeability of debts had passed. However, Moraine did not have notice or actual knowledge of Narkarko's bankruptcy case in time for a timely filing of the complaint, and the alleged debt is of a kind specified in §523(a)(2), (4) and (6). Section 523(a)(3)(B) provides that a debtor is not discharged from a debt of a kind specified in §523(a)(2), (4) or (6) that was "neither listed nor scheduled ... in time to permit ... [a]

6

timely request for a determination of dischargeability of such debt ..., unless such creditor had notice or actual knowledge of the case in time for such timely ... request."

Although reported opinions differ on the creditor's burden of proof under §523(a)(3)(B), the majority view is that the creditor must demonstrate the merits of his underlying claim under §523(a)(2), (4) or (6) to prevail. This approach is in harmony with the presumption in favor of discharge and the debtor's fresh start as well as the strict construction of discharge exceptions against the creditor. *See Equitable Bank v. Miller (In re Miller),* 39 F.3d 301 (11th Cir. 1994). Accordingly, in order to prevail on his Complaint, Moraine must prove that his claim against Nazarko is non-dischargeable under §523(a)(2)(A), (4) or (6). The Court, therefore, turns to the merits of Moraine's claims.

## 11 U.S.C. §523(a)(2)

Section 523(a)(2)(A) of the Bankruptcy Code provides that:

> [A] discharge under §727 . . . of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A). This section encompasses similar but distinct causes of action. Though other circuits have applied a uniform standard to all section 523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" on the one hand and "false pretenses and false representations" on the other. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

According to the Fifth Circuit, in order to be a false representation or false pretense, the representation must have been a knowing and fraudulent falsehood, describing past or current facts, that was relied upon by the other party. *Id.* at 1293.

Actual fraud requires the additional proof of the debtor's intent to deceive and a loss by the creditor which is proximately caused by the fraud. *Id.* at 1293. In coming to its decision in *Recoveredge,* the Fifth Circuit declined to follow other circuits which had applied a uniform standard to all debts under §523(a)(2).

More recently, however, the Fifth Circuit has stated, without distinguishing between the different torts encompassed by §523(a)(2)(A), that for a debt to be non-dischargeable under that section, the creditor must show that (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of his reliance. *General Elec. Capital Corp. v. Acosta (In re Acosta),* 406 F.3d 367, 371 (5th Cir. 2005). An intent to deceive may be inferred from a reckless disregard for the truth or the falsity of a statement combined with the sheer magnitude of the resulting misrepresentation. *Id.* Furthermore, silence as to material facts can constitute a false representation. *Id.*

Here, Nazarko represented that he had an agreement with Datcher to sell the Acura to Datcher for $15,500. Nazarko knew that representation was false. The representation was made with the intent to deceive Moraine in order to obtain title to the Acura. Moraine, who had previously purchased several cars from Nazarko, actually and justifiably relied on Nazarko's representations. Moraine lost the Acura and was thereby injured as a result of his reliance on Nazarko's false representations. For the foregoing reasons, the Court concludes that Moraine has established that Nazarko obtained property

from Moraine by false representations and that such debt is non-dischargeable under §523(a)(2)(A) of the Bankruptcy Code.

## 11 U.S.C. §523(a)(4)

"A discharge under section 727 ... of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). However, the concept of fiduciary under §523(a)(4) is a much narrower one than under general common law and "is limited to instances involving express or technical trusts." *Miller v. J.D. Abrams, Inc.* (*Matter of Miller*), 156 F.3d 598, 602 (5th Cir.1998); *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 - 43 (5th Cir. 1998). Thus, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question. *See Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

Embezzlement is defined for the purposes of §523(a)(4) as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *See Matter of Miller,* 156 F.3d at 602.

> [Embezzlement] differs from larceny in that the original taking of the property was lawful, or with consent of the owner, while in larceny the felonious intent existed at the time of the taking. Larceny is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's own use without the consent of the owner.

*McDaniel v. Border (In re McDaniel)*, 181 B.R. 883, 887 (Bankr. S.D. Tex. 1994). Thus, "[a] creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996); *In re Sokol,* 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994).

9

*Cf: Coburn Co. v. Nicholas (In re Nicholas),* 956 F.2d 110, 111 (5th Cir. 1992) (requiring an intent to defraud for a determination of whether there has been a breach of a fiduciary relationship under §523(a)(4)).

Here, Moraine failed to establish the sort of trust relationship required for a breach of fiduciary duty claim. However, Moraine has established that he entrusted clear title to the Acura to Nazarko for the purpose of selling the Acura to Datcher. Moraine did not, in fact, sell the Acura to Datcher -- Datcher took possession of the Acura but eventually returned it to Nazarko. Instead of returning the Acura to Moraine, Nazarko converted it to his own use. Nazarko's testimony at trial that he has no knowledge of the disposition or current whereabouts of the Acura was not credible. The Court concludes that the circumstances surrounding the disappearance of the Acura indicate fraud and that the preponderance of the evidence establishes grounds for nondischargeability under §523(a)(4).

## 11 U.S.C. §523(a)(6)

A party objecting to dischargeability under §523(a)(6) must show that the defendant-debtor acted with the requisite *mens rea*, that is, the objecting party must show that the defendant-debtor's action caused an injury and that the objecting party incurred damages related to such injury. "For a debt to fall within this exception to discharge the creditor has the burden of proving that it sustained an injury *as a result* of a willful and malicious act by the debtor. Thus, a debtor's actions must be determined to be the cause of the creditor's injury." *In re Smith,* 249 B.R. 748, 750 (Bankr. S.D. Ohio 2000) (emphasis in original).

Additionally, the Supreme Court has examined whether the scope of §523(a)(6) encompasses all intentional acts that cause injury, or only acts done with an actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). In *Geiger*, the Supreme Court stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." The Supreme Court concluded that to construe the statute more broadly -- *i.e.*, to find a debt nondischargeable if it arose from an intentional act that ultimately led to injury -- would wrongfully place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended.[4]

The *Geiger* decision significantly narrows of the scope of debts which can be deemed nondischargeable under §523(a)(6). *See Berger v. Buck (In re Buck)* 220 B.R. 999, 1004 (B.A.P. 10th Cir. 1998). Following the Supreme Court's ruling in *Geiger*, the lower courts, including the Fifth Circuit, have attempted to isolate and to identify those deliberate or intentional actions involving an "actual intent to cause injury," as would be necessary to meet the definition of "willful" under *Geiger*, from other deliberate or intentional acts that lead to injury.

In *Miller*, the Fifth Circuit determined that a "willful" injury is established under §523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate or intentional action, or (2) there is a subjective motive to cause harm by a party taking a deliberate or intentional action. The Fifth Circuit further determined that the standard for determining the existence of a "willful" injury under *Geiger* had

---

[4] One example specifically mentioned by the Supreme Court was a debt arising from a "knowing breach of contract." The Court observed that "a construction so broad would be incompatible with the "well-known" guide that exceptions to discharge should be confined to those plainly expressed. *Id*. at 977.

11

subsumed the Fifth Circuit's former standard for determining "malicious" conduct under §523(a)(6) -- *i.e.,* "without just cause or excuse" -- and had eliminated any need to conduct a separate analysis on that malice element. *Matter of Miller*, 156 F.3d at 604-06. Accordingly, the Fifth Circuit held in *Miller* that, in determining whether a debt is nondischargeable under §523(a)(6), "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *Id*. at 606. *See also Caton v. Trudeau (Matter of Caton)*, 157 F.3d 1026, 1029 (5th Cir. 1998); *Texas v. Walker,* 142 F.3d 813, 823 (5th Cir. 1998); *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 271 (5th Cir. 2005).

The Fifth Circuit has acknowledged that a breach of contract may involve an intentional or substantially certain injury. *See Williams v. Int'l Brotherhood of Elec. Workers Local 520 ( In re Williams),* 337 F.3d 504, 510 (5th Cir. 2003) (citing *Walker,* 142 F.3d at 823; *Miller,* 156 F.3d at 606). In *Walker,* the debtor committed the tort of conversion by keeping professional fees instead of remitting them to his employer, the University of Texas, in violation of his employment contract. The Fifth Circuit maintained the distinction between an injury under §523(a)(6) and an intentional tort in *Walker*, concluding that the debtor's conversion of professional fees did not inflict a willful and malicious injury. However, "*Walker* suggest[ed] that a knowing breach of a clear contractual obligation that is certain to cause injury may prevent discharge under §523(a)(6), regardless of the existence of separate tortious conduct." *In re Williams*, 337 F.3d at 510. In its subsequent opinion in *Williams*, the Fifth Circuit expressly held that §523(a)(6) "excepts contractual debts from discharge when those debts result from an intentional or substantially certain injury." In order to determine whether this has

12

occurred, a court must look at the knowledge and intent of the debtor at the time of the breach. *See id.*

Here, Nazarko acted with the requisite *mens rea*. His failure to sell the Acura to Datcher or to return the Acura to Moraine injured Moraine. Moreover, Nazarko converted the Acura or its proceeds to his own use in breach of his agreement with Moraine. Nazarko knew or should have known that his actions would injure Moraine. The Court, therefore, concludes that the preponderance of the evidence establishes grounds for nondischargeability under §523(a)(6).

## **Attorneys' Fees**

Under the "American Rule" applied in federal litigation, a prevailing litigant may not collect attorneys' fees from his opponent unless such fees are authorized by federal statute or an enforceable contract between the parties. *See In re Sheridan*, 105 F.3d 1164 (7th Cir. 1997). The only statutory authorization for an award of attorneys' fees in a dischargeablity proceeding is found in 11 U.S.C. §523(d), which gives a prevailing debtor a right to attorneys' fees in certain cases. With regard to a request by a prevailing creditor for his attorneys' fees, such fees form a part of a bankruptcy claim and can be nondischargeable where the creditor has a contractual right to them valid under state law. *See Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 226-27, *overruled on other grounds by Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257 (5th Cir. 1993). If the contractual right to attorneys' fees is valid and enforceable, that obligation becomes part of the "debt" deemed nondischargeable under 11 U.S.C. §523(a). *See, e.g., In re Sheridan*, 105 F.3d at 1166-1167.

In this case, Moraine, as the prevailing creditor, has no statutory right to his attorneys' fees incurred in connection with this nondischargeability action under the Bankruptcy Code. Moraine failed to establish any contractual right to recover his attorneys' fees from Nazarko. Moreover, the attorneys' fees awarded by the state court do not stem from the same basis as the debt in this case because the exception to dischargeability is sought on the basis of Nazarko's embezzlement, fraud and conversion claims, while the Texas state court awarded attorneys' fees on the basis of §38.001 of the Texas Civil Practice and Remedies Code, which allows attorneys' fees on a claim for breach of contract. Because the state court did not award attorneys' fees on the basis of the breach of fiduciary duty, fraud, or conversion claims, Moraine's claim for his pre-petition attorneys' fees incurred in connection with the state court proceeding is dischargeable. *Cf: In re Horton,* 85 F.3d 625, 1996 WL 255304 at *5 (5th Cir. May 3, 1996) (reversing a judgment that attorneys fees awarded under TEX. CIV. PRAC. & REM. CODE §38.001 were dischargeable); *In re Cohen,* 185 B.R. 180, 189-190 (Bankr. D. N.J. 1995); *aff'd,* 191 B.R. 599 (D. N.J. 1996), *aff'd* 106 F.3d 52 (3rd Cir. 1997), *aff'd, Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (bankruptcy court liquidated creditors' claim and awarded attorneys' fees and costs under state law).

### Pre-Judgment Interest

With respect to Moraine's request for prejudgment interest, determining the dischargeability of debt under 11 U.S.C. §523(a) is purely matter of federal law. Thus, the rate of prejudgment interest is fixed by 28 U.S.C. §1961. *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,* 7 F.3d 1203, 1209 (5th Cir. 1993); *In re Brace*, 131 B.R. 612 (Bankr. W.D. Mich. 1991). Whether to award prejudgment interest lies within the sound

discretion of the Court. *Jackson County v. United States,* 308 U.S. 343, 352, 60 S.Ct. 285, 84 L.Ed. 313 (1939).

Here, Nazarko entered into an agreement to sell Moraine's Acura sometime in June of 1997. Nazarko misrepresented that Datcher had agreed to purchase the Acura and thereby obtained clear title to Moraine's Acura by false representations for the purpose on converting the Acura to his own use. Under 28 U.S.C. §1961, the applicable rate of interest as of July 10, 1997 was 5.65%. Interest at that rate shall accrue on the sum of $14,000 from July 10, 1997, through the date of this Court's Judgment.

## **CONCLUSION**

For the foregoing reasons, the Court finds that Nazarko's obligation to Moraine in connection with the agreement to sell Moraine's Acura, in the amount of $14,000, is nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A), (4) and (6). However, Moraine failed to establish the nondischargeability of the attorneys' fees awarded by the state court or any entitlement to attorneys' fees or costs in this nondischargeability action. The Court will enter a Judgment consistent with this Memorandum Opinion.

Signed on 1/31/2008

*Brenda T. Rhoades*    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE